An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-468

Filed 21 January 2026

Scotland County, No. 21CR051581-820

STATE OF NORTH CAROLINA

v.

JOHN ROBERT HERNANDEZ, Defendant.

Appeal by Defendant from judgment entered 9 October 2024 by Judge Michael A. Stone in Scotland County Superior Court. Heard in the Court of Appeals 19 November 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Kristin Cook McCrary, for the State.*
>
> *W. Michael Spivey for Defendant-Appellant.*

CARPENTER, Judge.

John Robert Hernandez ("Defendant") appeals from judgment entered after a jury found him guilty of one count each of statutory rape of a child by an adult, resisting a public officer, and assault on a government official. On appeal, Defendant argues the trial court erred by: (1) violating his right to effective assistance of counsel; (2) failing to conduct an adequate colloquy to determine whether he sufficiently

waived his right to counsel; and (3) denying his motion to dismiss for violating his right to a speedy trial. After careful review, we dismiss in part and discern no error in part.

## I. Factual & Procedural Background

On 20 September 2021, a Scotland County grand jury indicted Defendant for one count each of statutory rape of a child by an adult, resisting a public officer, and assault on a government official. On 24 August 2021, the trial court appointed Lisa Freedman to represent Defendant. On 15 December 2021, Freedman moved to withdraw due to a conflict of interest. On 16 December 2021, the trial court allowed Freedman's motion and appointed Kelly Dawkins to represent Defendant.

While represented by Dawkins, Defendant sent several *pro se* letters and "motions" to the trial court between approximately January 2022 and July 2024.[1] In one letter, Defendant said, "I would like to have my attorney removed from my case I'm not being kept informed on developments of my case I feel like he ain't trying to help me . . . ." In another letter, Defendant stated he and his attorney "are not seeing eye to eye . . . he is not the best thing for me . . . so I need him to be removed." Defendant sent several other letters requesting removal of Dawkins as his attorney. Later, Defendant sent a letter explaining, "I'm in the process of firing my lawyer and I would like to represent myself in district court so I can get this matter out of the

---

[1] The record reflects the dates the letters and "motions" were filed with the trial court.

way please!" Defendant also sent multiple letters asking for a bond reduction and speedy trial.

In addition to his letters, Defendant sent a "motion for reduction in bail" and a "supplement to motion to reduce bail" arguing his $250,000 bail amount was excessive and should be reduced to $30,000. Defendant next sent a "motion to terminate counsel and request new/substitute counsel," asking the trial court to remove Dawkins as his attorney and appoint new counsel. Defendant also sent a "motion to dismiss," arguing insufficient evidence and "violations of [Defendant's] speedy trial rights, and violations of other constitutional rights." Finally, Defendant sent a "combined motion to request the appointment of standby counsel, request for special legal adviser appointment, and to disclose witnesses for trial." Specifically, Defendant requested to represent himself, to have standby counsel, and for the trial court to appoint a fellow inmate as a "legal advisor." The trial court did not issue rulings on Defendant's letters and "motions."

On 22 July 2024, during a hearing, Dawkins moved to withdraw due to a breakdown in communications." Defendant agreed and requested to proceed *pro se*. The trial court engaged in a colloquy with Defendant regarding his decision to waive representation and continue *pro se*.

Thereafter, the trial court determined Defendant sufficiently waived his right to representation, had Defendant sign a waiver, allowed Dawkins to withdraw, and appointed standby counsel. During a pre-trial hearing on 12 August 2024, the trial

court asked Defendant whether he was certain that he wished to proceed *pro se*, to which Defendant replied that he had "no choice" and had "made the decision already . . . ."

Defendant's case proceeded to trial on 7 October 2024. On 9 October 2024, the jury found Defendant guilty as charged. The trial court sentenced Defendant to a minimum of 300 months and maximum of 420 months in the custody of the Department of Adult Correction. Defendant entered oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) violating Defendant's right to effective assistance of counsel; (2) failing to conduct an adequate colloquy to determine whether Defendant sufficiently waived his right to counsel; and (3) denying Defendant's motion to dismiss for violating his right to a speedy trial.

## IV. Analysis

### A. *Pro Se* Letters and "Motions"

Defendant's first series of arguments concern the pre-trial letters and "motions" that he sent to the trial court *pro se* while represented by Dawkins. Defendant argues the trial court violated his constitutional right to effective assistance of counsel and to a speedy trial by failing to hear and rule on his letters

- 4 -

and "motions." Because Defendant failed to preserve these constitutional arguments, we dismiss.

"[A] constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) (cleaned up). Criminal defendants have the "right to the effective assistance of counsel" and right to a speedy trial under the Sixth Amendment of the United States Constitution. *State v. Braswell*, 312 N.C. 553, 561, 561, 324 S.E.2d 241, 247 (1985); U.S. Const. Amend. VI.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from context" and "obtain a ruling" on that objection or motion. N.C. R. App. P. 10(a)(1) (2025). In addition, a "defendant has only two choices—to appear *in propria persona* or, in the alternative, by counsel." *State v. Williams*, 363 N.C. 689, 700, 686 S.E.2d 493, 500−01 (2009) (internal quotation marks and citations omitted). A defendant "has no right to appear both by himself and by counsel. Nor should he be permitted *ex gratia* to do so." *State v. Farook*, 381 N.C. 170, 185, 871 S.E.2d 737, 750 (2022) (quoting *Abernethy v. Burns*, 206 N.C. 370, 370−71, 173 S.E. 899, 900 (1934)). When a represented defendant files a *pro se* motion, it is a "legal nullity." *Id.* at 185, 871 S.E.2d at 750.

Here, when Defendant sent the various *pro se* letters and "motions," he was

represented by Dawkins.  Because Dawkins did not adopt these *pro se* letters and "motions," they were legal nullities.  *See Farook*, 381 N.C. at 185, 871 S.E.2d at 750; *Williams*, 363 N.C. at 700, 686 S.E.2d at 500−01.  Further, as Defendant did not renew any requests made in his letters or "motions" after Dawkins's withdrawal, Defendant's arguments are unpreserved.  *See* N.C. R. App. P. 10(a)(1); *Hunter*, 305 N.C. at 112, 286 S.E.2d at 539.

As a result, Defendant requests we invoke Rule 2 to address these arguments to prevent manifest injustice.  *See* N.C. R. App. P. 2 (2025).  Rule 2 should be invoked "cautiously" in "exceptional circumstances," which is always "a discretionary determination made on a case-by-case basis."  *State v. Conley*, 264 N.C. App. 85, 89−90, 825 S.E.2d 10, 12−13 (2019).  Defendant failed to demonstrate exceptional circumstances warranting suspension of our appellate rules.  In the exercise of our discretion, we decline to invoke Rule 2.  Accordingly, we dismiss these arguments as unpreserved.

## B.  Waiver of Counsel

Defendant argues the trial court erred by allowing him to waive his right to counsel after conducting an inadequate statutorily-required colloquy.  Specifically, Defendant argues the trial court failed to advise him of his right to assistance of counsel or the nature of the charges against him and the possible punishments.  Defendant also contends he did not make a knowing, intelligent, and voluntary waiver of his right to counsel.  We disagree.

This Court "reviews the sufficiency of a trial court's statutory inquiry concerning a defendant's waiver of his rights to counsel *de novo.*" *State v. Harper*, 285 N.C. App. 507, 516, 877 S.E.2d 771, 780 (2022). Under de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Criminal defendants have the "right to waive counsel, represent themselves, and handle their case without assistance of counsel." *Harper*, 285 N.C. App. at 516, 877 S.E.2d at 780. "Once a defendant clearly and unequivocally states that he wants to proceed *pro se,* the trial court . . . must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel." *State v. Thomas*, 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992). The trial court must conduct a colloquy to determine whether the "constitutional and statutory standards are satisfied." *State v. Moore*, 362 N.C. 319, 322, 661 S.E.2d 722, 724 (2008). "During this colloquy, the trial court must determine 'whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel.'" *State v. McGirt*, 298 N.C. App. 223, 229, 913 S.E.2d 476, 480–81 (2025) (quoting *Moore*, 362 N.C. at 322, 661 S.E.2d at 722). The trial court must be satisfied that the defendant:

> (1) Has been clearly advised of his right to the assistance

of counsel, including his right to the assignment of counsel
when he is so entitled;
(2) Understands and appreciates the consequences of this
decision; and
(3) Comprehends the nature of the charges and proceedings
and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242 (2023).

After Dawkins expressed his desire to withdraw and have the trial court appoint Defendant new counsel, Defendant informed the trial court: "I would like to remove him and represent myself. I got a motion already in the docket right there." The trial court then began its colloquy. During the colloquy, the trial court inquired about Defendant's age, education, and substance use. The trial court also asked Defendant, "Do you understand the reason I'm asking you these questions is to establish for the record that your decision to represent yourself is the result of your own thinking and reasoning and judgment and not as a result of any kind of substance that you may have consumed?" Defendant responded, "Yes, sir. I understand." The trial court continued:

> **Trial court:** Do you believe today your mind is clear?
> **Defendant:** Mm-hmm.
> **Trial court:** You believe –
> **Defendant:** Yes, sir.
> **Trial court:** And do you believe that you understand what you're doing at making this decision at this hearing?
> **Defendant:** Yes, sir.
> **Trial court:** Do you understand that if you represent yourself, I will not be able, or whoever the judge is will not be able to give you legal advice?
> **Defendant:** Yes, I understand, sir.
> **Trial court:** And do you understand that if you represent

yourself, the DA will not be able to give you legal advice?
**Defendant:** Yes, sir.
**Trial court:** And none of the other court personnel will be able to give you legal advice, whether it's bailiffs or court reporter, court clerk. Simply have to allow you to make your own decisions.
**Defendant:** Yes, sir.
**Trial court:** And knowing all that, is it your intention to represent yourself in connection with these charges?
**Defendant:** Yes, sir.

The trial court then advised Defendant that his charges included a class B1 felony that carries a possible maximum life sentence without parole, "a very serious charge." Defendant responded, "I understand what's going on." Finally, the trial court clarified, "And understanding that, is it your intention to represent yourself in connection with these charges for which you could receive a potential life sentence?" Defendant replied, "I understand, sir." At the end of the colloquy, the trial court noted that Defendant needed to sign a waiver "waiving all counsel in this case."

As Dawkins, Defendant's second appointed counsel, stood next to Defendant, the trial court clarified that the decision to proceed *pro se* or continue with new representation was in Defendant's hands. Indeed, during the colloquy, the trial court made multiple references to Defendant's "decision" to represent himself versus continuing with representation. Defendant repeatedly told the trial court that he understood. In addition, at the end of the colloquy, the trial court noted that Defendant needed to sign a document waiving his right to counsel. In the waiver of counsel, Defendant certified that he was "fully informed . . . [of] his right to have

counsel assigned by the court" and "right to have the assistance of counsel to represent him . . . in this action . . . ." Defendant also selected the box noting that he "elected in open court to be tried in this action . . . without the assistance of counsel, which includes the right to assigned counsel and the right to assistance of counsel."

The trial court was satisfied that Defendant comprehended and appreciated the consequences of his decision to waive his right to assistance of counsel. The trial court explained to Defendant the effect of proceeding *pro se*—that he could not receive legal advice from the State or court personnel and would have to make his "own decisions" regarding his case. When the trial court asked Defendant whether he understood these consequences, Defendant repeatedly said, "Yes, sir."

Despite not providing the entire range of permissible punishments for Defendants' three charges, the trial court advised Defendant of the most serious potential punishment—life imprisonment without the possibility of parole for the statutory rape charge. Given Defendant's clear and unequivocal desire to proceed *pro se* despite facing life imprisonment without the possibility of parole, we cannot conclude that the trial court's failure to provide the full range of permissible punishments for each charge "invalidated Defendant's otherwise knowing and voluntary waiver of counsel." *See State v. Gentry*, 227 N.C. App. 583, 600, 743 S.E.2d 235, 246 (2013) (determining that the trial court's error in misstating the defendant's maximum possible sentence by fourteen years did not invalidate his waiver of counsel because, either way, his maximum possible sentence was "tantamount to a life

sentence"). In other words, given Defendant clearly understood that he faced life imprisonment without the possibility of parole and nonetheless desired to proceed *pro se*, "we cannot conclude that there was a reasonable likelihood that Defendant's decision . . . would have been materially influenced by the possibility" that he could have received a less severe sentence. *See id.* at 600, 743 S.E.2d at 246–47.

Accordingly, the trial court's colloquy was sufficient to ensure Defendant was clearly advised of his right to counsel, understood and appreciated the consequences of his decision, and comprehended the nature of the charges and proceedings and the range of permissible punishments. *See* N.C. Gen. Stat. § 15A-1242 (2023). Because the trial court's colloquy was adequate, Defendant's decision to waive his right to counsel was knowing, intelligent, and voluntary. *See Thomas*, 331 N.C. at 673, 417 S.E.2d at 475.

## V. Conclusion

Because Defendant's effective assistance of counsel and speedy trial arguments were legal nullities, they are unpreserved, and we decline to address them under Rule 2. In addition, the trial court's inquiry was adequate, and Defendant's waiver of his right to counsel was knowing, intelligent, and voluntary. Accordingly, we discern no error in part and dismiss in part.

NO ERROR in part; DISMISSED in part.

Judges WOOD and GORE concur.

Report per Rule 30(e).